UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOHN C. STANDLEY,<br><br>                    Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                    Defendant. | Case No. 3:15-cv-05590-KLS<br><br>ORDER REVERSING AND<br>REMANDING DEFENDANT'S<br>DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of his application for disability insurance benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court finds that defendant's decision to deny benefits should be reversed, and that this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On June 15, 2004, plaintiff filed an application for disability insurance benefits alleging he became disabled beginning May 23, 2003. Dkt. 13-14, Administrative Record (AR), 18. That application was denied on initial administrative review and on reconsideration. *Id.* At a hearing held before an Administrative Law Judge (ALJ) plaintiff appeared and testified, as did a medical

ORDER - 1

expert and a vocational expert. AR 740-84.

In a decision dated January 16, 2008, the ALJ found plaintiff could perform his past relevant work and therefore was not disabled. AR 18-26. Plaintiff appealed that decision to this Court, which remanded the matter for further administrative proceedings. AR 820-36.

A second hearing was held before a different ALJ on remand, at which plaintiff appeared and testified as did a different vocational expert. AR 1079-1132. In a decision dated October 4, 2012, that ALJ also found plaintiff could perform his past relevant work and therefore was disabled. AR 798-812. It does not appear that the Appeals Council assumed jurisdiction of this case, making the ALJ's decision the Commissioner's final decision, which plaintiff appealed to this Court. 20 C.F.R. § 404.984; Dkt. 1.

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits, or in the alternative for further administrative proceedings, arguing the ALJ erred:

(1) in evaluating the medical evidence in the record, including that from Armon Toomajian, M.D., Ryan Chew, M.D., Deborah L. Chaquette, ARNP, Diana Shearer, M.D., and Christy Ulleland, M.D.;

(2) in discounting plaintiff's credibility;

(3) in evaluating the lay witness evidence from plaintiff's landlady and plaintiff's wife;

(4) in assessing plaintiff's residual functional capacity (RFC); and

(5) in finding plaintiff could perform her past relevant work.

For the reasons set forth below, the Court agrees the ALJ erred in evaluating the opinions of Drs. Toomajian and Chew, as well as the lay witness evidence from both plaintiff's landlady and plaintiff's wife – and thus in assessing plaintiff's RFC and in determining that he could perform his past relevant work – but finds remand for further administrative proceedings, rather than an award of benefits, is warranted.

ORDER - 2

# DISCUSSION

The Commissioner's determination that a claimant is not disabled must be upheld if the "proper legal standards" have been applied, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991). "A decision supported by substantial evidence nevertheless will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193.

The Commissioner's findings will be upheld "if supported by inferences reasonably drawn from the record." *Batson*, 359 F.3d at 1193. Substantial evidence requires the Court to determine whether the Commissioner's determination is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

I. The ALJ's Evaluation of the Medical Evidence

The ALJ is responsible for determining credibility and resolving ambiguities and

ORDER - 3

conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such situations, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

ORDER - 4

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

A.   Dr. Toomajian

At the first hearing, Dr. Toomajian testified that the heart and chest pain plaintiff reported experiencing "[s]ure can" cause fatigue, and that it would contribute to him feeling "pretty worn out" and needing to take a nap by the afternoon. AR 777-78. Accordingly, Dr. Toomajian found plaintiff's complaints of fatigue to be credible. AR 778. The ALJ addressed Dr. Toomajian's testimony as follows:

> Medical Expert, Armon Toomajian, M.D., a board certified internist and specialist in the field of rheumatology reviewed the claimant's medical records and testified that the claimant could lift 10 pounds frequently, sit for 6 hours in an 8 hour workday, stand or walk for 3-4 hours out of an 8 hour workday. I give significant weight to Dr. Toomajian's opinion because it is based on a thorough review of the medical record and is consistent with the overall objective evidence of record. However, in light of the claimant's left shoulder tendinopathy, complaints of back pain and numbness in his hands I incorporated additional postural and manipulative limitations.

AR 810.

Plaintiff argues the ALJ erred here because while the ALJ stated he gave Dr. Toomajian's

ORDER - 5

opinion great weight, he did not mention plaintiff's fatigue or need to nap in his RFC assessment. The Court agrees. Defendant argues no error occurred, since Dr. Toomajian did not provide any opinion regarding the extent and frequency of plaintiff's fatigue or need to take naps, or whether these symptoms imposed significant limitations on plaintiff's ability to work and function. The ALJ, however, has the duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). Dr. Toomajian's belief that plaintiff's complaints of fatigue were credible should have put the ALJ on notice that those symptoms could have a significant impact on plaintiff's ability to perform work-related tasks, particularly given his reported need to nap. The ALJ's failure to investigate that issue further was error.

B.   Dr. Chew

In early October 2004, plaintiff was examined by Dr. Chew, who recommended that he use an assistive device "for short and long distances as well as uneven terrain." AR 302. The ALJ stated he gave "significant weight" to this portion of Dr. Chew's opinion (AR 810), and included the need to use a cane "**for ambulation beyond one city block**" in his assessment of plaintiff's RFC (AR 804 (emphasis in the original)). Plaintiff argues this limitation does not adequately account for the recommendation Dr. Chew made. The Court again agrees. Because Dr. Chew recommended plaintiff use an assistive device for short *and* long distances, the ALJ's determination that plaintiff would not need a cane for distances of less than a city block appears to conflicts with that recommendation. The ALJ also does not mention the need for an assistive device over uneven terrain. Thus, here too the ALJ erred.

II.   The ALJ's Evaluation of the Lay Witness Evidence

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must

ORDER - 6

take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642.

The record contains lay witness statements from plaintiff's landlady and plaintiff's wife, which the ALJ addressed as follows:

> The claimant's landlady, Linda Lunsford, completed a third party function report on August 4, 2004 (3E). Ms. Lunsford stated that the claimant could lift and carry up to 20 pounds and walk up to 100 feet (3E/6). She also stated that the claimant's ability to pay attention appeared normal and he had sufficient concentration to drive, shop, and attend church services (3E/4-5). Ms. Lunsford stated that the claimant had no problems using his hands and observed that he was able to mow the yard with several rest breaks (3E/3, 6). Some weight was given to the Ms. Lunsford statements, which show that the claimant has rather robust activities of daily living.
>
> Cheryl Fontaine, the claimant's wife, completed a third party function report on August 6, 2004 (5E). Mrs. Fontaine reported that the claimant woke up during the night to change positions because of pain and he took naps every afternoon. Nevertheless, Mrs. Fontaine stated that the claimant was still able to mow the yard, clean the bathroom, do laundry, make the bed, shop for groceries, drive a car, and attend church. Mrs. Fontaine also stated that the claimant could lift up to 20 pounds and had no problems using his hands (5E/6). The claimant's activities seem to support someone who can do sedentary to light work. I give some weight to Ms. Fontaine statements. Ms. Fontaine further reported that the claimant needs a cane to walk further than one walk. The residential functional capacity expressly recognizes that the claimant needs a cane to ambulate beyond once [sic] city block.

AR 810-11.

Plaintiff asserts the ALJ briefly discussed the two lay witnesses' statements, but did not state any reason for rejecting them. While as noted above the ALJ did indicate he was not giving

ORDER - 7

full weight to those statements, the Court agrees the ALJ did not offer a sufficient basis for doing so. For example, as plaintiff points out, Ms. Lunsford reported that he had to lie down and rest in the afternoon due to back pain, and as noted by the ALJ, she further reported that plaintiff had to stop several times while mowing the lawn to rest. AR 99, 101. Ms. Lunsford also observed that plaintiff had to stop and rest several times and lean on his cart while shopping, and that he was having more difficulty walking. AR 102-03. Such comments hardly indicate an ability to engage in "rather robust activities of daily living." AR 811.

Likewise, Ms. Fontaine stated that plaintiff lies down and takes a nap every afternoon, , that when he cleans or mows the lawn he takes two to three times longer to do so, and that he takes twice as long to go shopping and has to lean on the cart. AR 121-22. The ALJ did not include any of these limitations – or those Ms. Lunsford observed – in his assessment of plaintiff's RFC, or explain why he excluded them. That failure on the ALJ's part constitutes reversible error.

III.     The ALJ's RFC Assessment

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* A claimant's RFC assessment is used at step four of the process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. SSR 96-8p, 1996 WL 374184 *2. It is what the claimant "can still do despite his or her limitations." *Id.*

A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id.* However, an inability to work must result from

ORDER - 8

the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ found plaintiff had the RFC:

> **to perform light work . . . except the claimant can lift 20 pounds occasionally, 10 pounds frequently, stand or walk for 2 hours in an 8-hour workday, and sit for 6 hours in an 8 hour workday. He can perform all postural activities at the no greater than occasional level with the following exceptions: he can never climb ladder [sic], ropes, or scaffolds. He can climb ramps or stairs no greater than 10% of the day. The claimant can perform overhead bilateral reaching no greater than occasionally. He should have no greater than frequent exposure to the following: extreme cold, excessive wetness, excessive vibration, operational control of moving machinery, and no unprotected heights. The claimant needs a cane for ambulation beyond one city block. He is limited to frequent handling and fingering.**

AR 804 (emphasis in the original). But because as discussed above the ALJ erred in evaluating the medical and lay witness evidence in the record, the ALJ's RFC assessment cannot be said to completely and accurately describe all of plaintiff's functional limitations. Accordingly, the ALJ erred here as well.

IV.     The ALJ's Step Four Determination

At step four of the sequential disability evaluation process, the ALJ found plaintiff to be capable of performing her past relevant work as a broadcast checker. AR 30. Plaintiff has the burden at step four of showing that she is unable to return to her past relevant work. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). Based on the above RFC assessment, the ALJ found plaintiff could perform his past relevant work as a computer support specialist and computer instructor. AR 811-12. Again, however, given the ALJ's failure to properly assess

ORDER - 9

plaintiff's RFC, it is far from clear that plaintiff is able to perform his past relevant work, and thus the ALJ's step four determination cannot be said to be free of error.

V. <u>Remand for Further Administrative Proceedings</u>

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues remain in regard to the medical evidence and lay witness evidence, plaintiff's RFC, and her ability to perform her past relevant work, remand for further consideration of those issues is warranted.

CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ improperly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and

ORDER - 10

this matter is REMANDED for further administrative proceedings.

DATED this 2nd day of September, 2016.

Karen L. Strombom
United States Magistrate Judge

ORDER - 11